NO. 15-10694-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

────────────

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

SHANE MARIANO,
*Defendant/Appellant.*

────────────

On Appeal from the United States District Court
for the Southern District of Florida

────────────

REPLY BRIEF OF THE APPELLANT
SHANE MARIANO

────────────

MICHAEL CARUSO
Federal Public Defender
Margaret Y. Foldes
Assistant Federal Public Defender
Attorney for Appellant Shane Mariano
One East Broward Boulevard,  Suite 1100
Fort Lauderdale, Florida 33301
Telephone No. (954) 356-7436

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## TABLE OF CONTENTS

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

REPLY ARGUMENT AND CITATIONS OF AUTHORITY.. . . . . . . . . . . . . . . 1

    I.    Both Parties Agree that Mr. Mariano Is Not an Armed

        Career Criminal.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    Mr. Mariano's Sentence Contains Reversible Error and Is

        Not Reasonable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    III.    Reversible Error Was Committed When the Court

        Admitted Into Evidence Unreliable Pre-Trial and In-Court

        Identification Testimony.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    IV.    The Court Erred When It Failed to Give the Defense

        Theory Jury Instruction Concerning Cross-Racial and/or

        Cross-Ethnic Identification.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    V.    The Court Erred When It Denied Mr. Mariano's Motion in

        Limine to Exclude DNA Evidence and When It Admitted

        Such Evidence at the Trial Because the DNA Evidence

        Was Prejudicial and Confusing and Not Helpful to the

        Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

VI.    Mr. Mariano Relies on His Initial Brief for All Other Issues

Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF CITATIONS

**CASES:**

Bonner v. City of Prichard,

    661 F.2d 1206 (11th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Daubert v. Merrell-Dow Pharmaceuticals, Inc.,

    509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

\*   Manson v. Brathwaite,

    432 U.S. 98, 97 S.Ct. 2243 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

\*   Rudd v. State of Florida,

    477 F.2d 805 (5th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shepard v. United States,

    544 U.S. 13, 125 S.Ct. 1254 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

\*   Simmons v. United States,

    390 U.S. 377, 88 S.Ct. 967 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

\*   State of New Jersey v. Henderson,

    208 N.J. 208, 27 A.3d 872 (N.J. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Bautista,

    23 F.3d 726 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Baylor,

      537 Fed.Appx. 149 (4th Cir. 2013).................................. 13

Johnson v. United States,

      135 S.Ct. 2551, 2015 WL 2473450 (2015). ......................... 2

United States v. Kent,

      531 F.3d 642 (8th Cir. 2008). ................................... 13

United States v. King,

      751 F.3d 1268 (11th Cir. 2014). .............................. 9-11

United States v. McCluskey,

      954 F.Supp. 1224 (D.N.M. 2013)................................. 13

United States v. Mitchell,

      502 F.3d 931 (9th Cir. 2007). ................................... 13

United States v. Morrow,

      374 F.Supp.2d 51 (D.D.C. 2005). ................................ 14

\*    United States v. Natson,

      469 F.Supp.2d 1253 (M.D. Ga. 2007). ........................... 14

United States v. Ortiz,

      No. 99-532, 2000 WL 37998 at \*1 (S.D.N.Y. 2000)................... 6

iv

United States v. Rodger,

     No. 09-040, 2010 WL 2643268 at *17 (S.D. Ga. 2010). . . . . . . . . . . . . . . 6

United States v. Walker,

     210 Fed.Appx. 737 (11th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTORY AND OTHER AUTHORITY:

18 U.S.C. § 922(g).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 924(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(e).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Evid. § 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Evid. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NY Penal Law § 140.20 (1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Wells, G.L., and Olson, E., "Eyewitness Testimony,"

     54 Annual Review of Psychology 277, 280-281 (2003). . . . . . . . . . . . . . . 8

v

## REPLY ARGUMENT AND CITATIONS OF AUTHORITY

**I.      Both Parties Agree that Mr. Mariano Is Not an Armed Career Criminal.**

Mr. Mariano was charged in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).  At sentencing, it was determined that Mr. Mariano qualified for the armed career criminal enhancement pursuant to 18 U.S.C. § 924(e) ("ACCA") based on a 1998 conviction for New York Third Degree Burglary, NY Penal Law § 140.20 (1998) as a third predicate offense. However, as Mr. Mariano explained in his initial brief, and as the government concedes in its responsive brief, the ACCA enhancement is not applicable in Mr. Mariano's case.  In light of Johnson, the 1998 New York burglary conviction does not qualify as a residual-clause ACCA predicate.  The government relied exclusively on the residual clause to qualify this burglary as a predicate offense because it was a non-generic burglary that did not qualify under the enumerated felonies clause and there were no documents pursuant to Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254 (2005).  (DE 65:3; DE 83:13).  Accordingly, in its responsive brief, the government agrees that the 1998 New York Third Degree Burglary conviction fails to qualify as a predicate under ACCA and it requests the Court to remand the case for resentencing without the ACCA enhancement, stating in pertinent part:

1

> In the wake of <u>United States v. Johnson</u>, [135] S.Ct. [2551], 2015 WL 2473450 (2015), the government agrees that Mariano no longer qualifies for sentencing under the ACCA. The ACCA was applied to Mariano through the residual clause which was struck down by the Supreme Court in <u>Johnson</u>. Because there is no longer a third predicate offense that qualifies under the remaining sections of the statute, the ACCA cannot be applied to Mariano. The government agrees that the sentence should be vacated and the matter be remanded for resentencing without the ACCA enhancement.

(Gov't br. pp. 16; <u>see</u> <u>also</u> Gov't br. pp. 37).

In light of the arguments made in Mr. Mariano's initial brief and the concessions made by the government, Mr. Mariano agrees that his case should be remanded for resentencing with directions that his sentence be reduced to eliminate the ACCA enhancement.

## II.    Mr. Mariano's Sentence Contains Reversible Error and Is Not Reasonable.

Mr. Mariano's sentence is unreasonable because it was erroneously calculated as an ACCA sentence. Mr. Mariano was sentenced under ACCA with a statutory minimum sentence of 15 years and a guideline level of 34 / criminal history category VI, for a guideline range of 262-327 months imprisonment. The court then varied

2

downward to 216 months.[1]

Because the ACCA enhancement is not valid, however, the statutory penalties, guideline range, criminal history category, and ultimate sentence imposed are erroneous and unreasonable.  Without the ACCA enhancement, Mr. Mariano has a *maximum* sentence of 10 years pursuant to 18 U.S.C. §§ 922(g) and 924(a)(2), and his guideline calculation is greatly reduced.  Thus, the current sentence of 216 months which Mr. Mariano is serving, exceeds the maximum penalty permissible under the law and is based on completely erroneous guideline calculations.  Such grievous errors unquestionably result in an unlawful and unreasonable sentence which requires reversal.

### III.   Reversible Error Was Committed When the Court Admitted Into Evidence Unreliable Pre-Trial and In-Court Identification Testimony.

In addition to the sentencing issues, Mr. Mariano challenges his conviction

---

[1] It appears that there is a typographical error in the government's brief concerning the length of the sentence imposed in Mr. Mariano's case.  The government stated that Mr. Mariano's sentence was "180 months (15 years)" and that he had a "maximum allowable sentence of life imprisonment." (Gov't br. pp. 13, 45).  Instead, the court below sentenced Mr. Mariano to 216 months (DE 68; DE 83:25-26).  However, because the ACCA enhancement is not applicable, both figures (180 months and 216 months)  exceed the maximum allowable sentence which is 120 months or 10 years.

because it was based on unreliable pre-trial and in-court identification testimony. The government's star witness was a Miami Beach cab driver, Ahmed Zagsloul, who claimed that Mr. Mariano had harassed him and threatened him with a gun in the early morning hours of January 17, 2014. This witness was permitted to testify about his supposed identification of Mr. Mariano, but his testimony was tainted by overly suggestive identification procedures and other factors which ultimately resulted in unreliable identification testimony.

Mr. Zagsloul's initial identification occurred when he provided a description of the suspect to police officers at the Krispy Krunchy Chicken market. (DE 81:173). This description was of a white male with a bald head and a white shirt. (DE 81:195). Knowing that this description did not correspond to Mr. Mariano, the government attempted to downplay its significance, stating that Mr. Zagsloul really meant "clean shaven" not "bald headed," and arguing that the description was "fairly accurate" with Mr. Mariano's appearance. (Gov't br. p. 21). However, Mr. Zagsloul's original description is significant because it did not match Mr. Mariano, but it did match another individual who was in the car that evening – Mr. Mariano's acquaintance, True – who disappeared when police arrived at the gas station. Even though both Mr. Zagsloul and the government attempted to distance themselves from the original description, it remained the critical first description of the suspect that was considered

4

accurate enough to transmit to all police officers on duty that night through a be-on-the-look-out ("BOLO") alert.  (DE 81:220-221).

Minutes after this first description, a police officer instructed Mr. Zagsloul to follow him to a Shell gas station where Mr. Mariano had been arrested.  The police officer informed Mr. Zagsloul that other officers had "found the [suspect's] car." (DE 81:160).  When he arrived at the gas station, Zagsloul was immediately confronted with an arrest scene in progress, where several police officers stood near Mr. Mariano, who was the only visible civilian.  Mariano sat handcuffed on a curb.  (DE 81:141).  In the midst of the scene was a white Mustang vehicle parked at a gas pump. With this as the backdrop, police asked Mr. Zagsloul if the handcuffed man being monitored by several police officers was the same man who had harassed him earlier that night.  Not surprisingly, Mr. Zagsloul agreed that Mr. Mariano was the same man, even though his earlier description of the suspect conflicted with Mr. Mariano's appearance at the gas station. (DE 81:141).  In spite of these circumstances, Zagsloul forged ahead with the identification, changing important characteristics of his description to fit the man that he saw at the gas station.

The government has cited a few nonbinding circuit and district court cases as well as a nonbinding unpublished Eleventh Circuit decision to argue that a valid show-up procedure could include a defendant in handcuffs or the visible presence of

5

police officers near the defendant. <u>United States v. Walker</u>, 210 Fed.Appx. 737, 741 (11th Cir. 2006) (unpublished); <u>United States v. Bautista</u>, 23 F.3d 726, 730 (2d Cir. 1994); <u>United States v. Rodger</u>, No. 09-040, 2010 WL 2643268 at *17 (S.D. Ga. 2010); and <u>United States v. Ortiz</u>, No. 99-532, 2000 WL 37998 at *1 (S.D.N.Y 2000). However, such cases fail to address the concerns set out in binding Eleventh Circuit precedent. <u>See</u> <u>Rudd v. State of Florida</u>, 477 F.2d 805, 809 (5th Cir. 1973)[2]; <u>see also</u> <u>Simmons v. United States</u>, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968). In the <u>Rudd</u> decision, for example, this Circuit acknowledged that the "singling out," of a witness by inviting witnesses to view the suspect while he was alone in the state attorney's office with one or two police officers, indicated to the witnesses that the man in custody was the man the police believed had committed the crime. <u>Rudd</u>, 477 F.2d at 809. Such a show-up, therefore, was a "classic example of impermissible suggestiveness." <u>Rudd</u>, 477 F.2d at 809. The show-up used in Mr. Mariano's case approximated the show-up in <u>Rudd</u> because Mr. Mariano was exhibited to Mr. Zagsloul while handcuffed and alone in the presence of police officers. Thus pursuant to <u>Rudd</u>, the show-up in the instant case was unduly suggestive and a violation of Mr. Mariano's due process rights.

---

[2] This Court has adopted as binding precedent all Fifth Circuit decisions rendered prior to October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en</u> <u>banc</u>).

Moreover, other factors that hampered reliability, which is the "linchpin" of identification testimony (Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977)), led to the conclusion that Zagsloul's identification testimony was improper.  As established at trial, Zagsloul's opportunity and ability to see was compromised as he was driving during all of the events and everything transpired in rapid succession – according to Zagsloul –  within two minutes from start to finish.  (DE 81:163). Moreover, Zagsloul's description of events showed that he frequently had obstructed views, as he was either looking at traffic, purposely looking away, or looking over to an unfamiliar vehicle for only a few seconds at a stop light.  Zagsloul's identification testimony also suffered from inherent inaccuracies caused by cross-racial and/or cross-ethnic identifications (see infra).  The inadequacy of Mr. Zagsloul's identification was confirmed by his varied descriptions of the suspect.  In contrast, there was no proof corroborating Mr. Zagsloul's account, such as other witnesses or video tapes of the incidents, even though events took place in highly traveled areas where people, security cameras, and red-light cameras would have been abundant.

The government glosses over the inadequacies, choosing to focus on the description that Zagsloul gave after seeing Mr. Mariano at the unduly suggestive show-up.  However, under the Supreme Court's decision of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977), it is the witness' original description that is given

7

the most weight in determining reliability, not descriptions that are given after the witness has had a chance to make new observations and regroup. Notwithstanding the government's arguments to the contrary, the overly suggestive show-up, the compromised ability of Zagsloul to accurately see, and the subsequent discrepancies in Zagloul's description of the suspect establish that his identification of Mr. Mariano, both in and out of the courtroom, were erroneous as a matter of law and require reversal of Mr. Mariano's conviction.

IV.    **The Court Erred When It Failed to Give the Defense Theory Jury Instruction Concerning Cross-Racial and/or Cross-Ethnic Identification.**

The error of the faulty identification testimony was compounded by the further error the court made when it refused to give the defense theory instruction concerning weaknesses in cross-racial and cross-ethnic identifications. The government attempts to diffuse the error by arguing that Mr. Mariano, an Italian-American born in New York was of the same race as the cab driver, Ahmed Zagsloul an Egyptian national who became a naturalized U.S. citizen during his adult years. (Gov't br. p. 28). Most people would consider these two individuals to be of different races and their physical characteristics bear out that Zagsloul has a darker complexion than Mr. Mariano, indicating a different race. But even if this Court agrees that both men technically

8

share the status of "Caucasian," the government has missed the point that identification accuracy plummets with respect to both cross-racial and cross-ethnic lines. See Wells, G.L., and Olson, E., "Eyewitness Testimony," 54 Annual Review of Psychology 277, 280-281 (2003) (herinafter "Eyewitness Testimony") ("[T]he evidence is now quite clear that people are better able to recognize faces of their own race or ethnic group than faces of another race or ethnic group.") (emphasis added). Therefore, even if Zagsloul is technically the same race as Mr. Mariano, he certainly is not the same ethnicity, and weaknesses in his ability to accurately identify Mr. Mariano across ethnic lines still remains.

The government has argued that the jury instruction requested was not supported by the trial evidence. However, the government is mistaken. The issue of cross-racial / cross-ethnic identification arose as part of the evidence when Zagsloul took the stand and purportedly identified Mr. Mariano at the show-up and in the courtroom. See State of New Jersey v. Henderson, 208 N.J. 208, 299, 27 A.3d 872, 926 (N.J. 2011).

The government has cited to United States v. King, 751 F.3d 1268 (11th Cir. 2014), to argue that additional evidence had to be presented to support Mr. Mariano's requested theory of defense instruction. In King, the defendant was accused of four Hobbs Act robberies of commercial establishments throughout Miami. In each case,

9

the victims identified Mr. King as the person who threatened them with a gun. Additionally, the government presented video footage and video still photographs of each robbery. (<u>King</u>, App. Case No. 12-16268, Gov't App. Br. at 45). Because some of the victims were not the same race as King, he requested a defense instruction on cross-racial identifications. The court denied the request, finding that there was no basis in the evidence to support the instruction.

However, <u>King</u> is distinguishable. First, the government presented video footage and video stills of the robberies in the <u>King</u> case. (<u>King</u>, App. Case No. 12-16268-BB, Gov't App. Br. at 27). Therefore, the jury could see for itself whether the victims' identifications were accurate. Additionally, all seven victim-witnesses, regardless of race, identified King as the person who threatened them with a gun. Out of the seven witnesses, at least three were of African decent, and therefore, they were the same race as defendant King. (<u>King</u>, App. Case No. 12-16268-BB, Gov't App. Br. at 28 & n.11). Under such circumstances, the inherent weaknesses of cross-racial and cross-ethnic identifications were mitigated. Therefore, requiring additional evidence on the issue of cross-racial identifications before giving the defendant's proposed instruction was reasonable.

In contrast, none of the mitigating circumstances present in <u>King</u> were present in Mr. Mariano's case. First, the government did not present video footage as part of

10

its case even though security cameras from nearby commercial establishments and red-light cameras at street intersections undoubtedly would have recorded some of the events in the case, and would have given the jury a basis for evaluating Mr. Zagsloul's identification of Mr. Mariano.   Additionally, in contrast to the seven witnesses who identified King, Mr. Zagsloul was the sole witness making an identification of Mr. Mariano.  As mentioned above – Mr. Zagsloul and Mr. Mariano – whether technically of the same race or not – were certainly from different ethnicities, and such differences have been shown to have the same effect as cross-racial identifications.  Eyewitness Testimony at 280-281.  Thus, rather than mitigating the weaknesses of cross-racial / cross-ethnic identifications, the circumstances in Mr. Mariano's case amplified the weaknesses because the critical identification hinged on one person who was of a different race or ethnicity than Mr. Mariano.  Due to these differences, <u>King</u> cannot be cited as justification for failing to give the  cross-racial / cross-ethnic jury instruction in this matter.  The <u>King</u> case did, "not suggest that instructions regarding cross-racial identifications are never warranted." <u>King</u>, 751 F.3d at 1276 n.4.  Instead, the <u>King</u> case only held that on the record before it, "the district court did not abuse its discretion in failing to give the requested instruction." <u>Id</u>.  Since Mr. Mariano's case is different from <u>King</u> in many significant respects, Mariano's requested instruction on cross-racial / cross-ethnic identifications

11

was necessary, and failure of the court to give the proposed instruction was reversible error.

The government also argues that the prejudice created by the refusal to give the instruction was cured because the court gave a pattern instruction on witness identification.  The major problem with the pattern instruction, however, is that it does not address cross-racial or cross-ethnic differences between the witness and the accused.  Accordingly, the pattern did not "substantially cover" the defendant's proposed theory of defense instruction.  Because Zagsloul's identification of Mr. Mariano played a key role in the case, the court's failure to give the defense theory instruction substantially prejudiced Mr. Mariano in his trial and in his ability to present and effective defense.  Accordingly, Mr. Mariano's conviction should be reversed.

**V.    The Court Erred When It Denied Mr. Mariano's Motion in Limine to Exclude DNA Evidence and When It Admitted Such Evidence at the Trial Because the DNA Evidence Was Prejudicial and Confusing and Not Helpful to the Jury.**

Mr. Mariano also challenged his conviction because the court had denied his motion in limine to exclude the government's inconclusive DNA evidence and had admitted the evidence at trial.  As explained in his initial brief, the DNA analysis

conducted by the government in this case was especially irrelevant and prejudicial because of the low statistical probabilities it produced with respect to Mr. Mariano, as contrasted to the scientific certainty those same tests produced with respect to another person. (See DE 46, Gov't Preliminary Exhibit List referencing "Exhibit 19," "DNA Comparison Report, April 21, 2014 (identification only)," which stated with reference to the magazine of the gun: "To a reasonable degree of scientific certainty, in the absence of an identical twin, Bamby Pierre is the source of the major DNA profile obtained from item #7 (swabbing of magazine from Lorcin .380)."). This was not a simple case where the DNA evidence merely failed to exclude the defendant from a pool of possible contributors. It was a case where a match had been made to a scientific certainty as to another individual, yet the government still presented for the jury the inconclusive findings with respect to the defendant. This set of circumstances can only be classified as irrelevant, distracting, and seriously misleading with respect to the evidence concerning Mr. Mariano.

These facts also take the situation out of the scenarios presented in the non-binding circuit and district court cases cited by the government. United States v. Baylor, 537 Fed. Appx. 149, 162 (4th Cir. 2013); United States v. Kent, 531 F.3d 642, 651 (8th Cir. 2008); United States v. Mitchell, 502 F.3d 931, 970 (9th Cir. 2007); United States v. McCluskey, 954 F.Supp.2d 1224, 1274-75 (D.N.M. 2013); United

States v. Morrow, 374 F.Supp.2d 51, 63-65 (D.D.C. 2005). Although the government cited to these cases to support its presentation of its DNA findings, the government did not cite to any Eleventh Circuit case on point, and it was dismissive of United States v. Natson, 469 F.Supp.2d 1253 (M.D. Ga. 2007), which was cited by the defendant. Even though Natson arose in a different context, the point of Natson is still applicable to the case at bar. Natson raises the issue of undue emphasis that jurors are likely to place on DNA analyses, even when – as here – the DNA findings are not scientifically significant, but are actually presented in a way that is more misleading than helpful. Thus, although expert testimony is relevant when it will assist "the trier of fact to understand the evidence or determine a fact in issue," (Daubert v. Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)), the DNA analysis presented by the government in Mr. Mariano's case failed to meet this basic test. It did not – as the government suggests (Gov't br. p. 24) – contribute in any meaningful way to the issues concerning the defendant's knowing possession of the firearm or the issue of whether the gun could have been in the defendant's car without his knowledge. Accordingly, Mr. Mariano submits that the denial of his motion in limine and the admission of the DNA evidence at his trial violated his Fifth and Sixth Amendments as well as Fed. R. Evid. 403 and 702. Accordingly, his conviction should be reversed.

14

## VI.    Mr. Mariano Relies on His Initial Brief for All Other Issues Presented.

With respect to the other issues contained in the initial brief, Mr. Mariano neither waives any argument nor concedes any point contained therein. Furthermore, Mr. Mariano specifically incorporates by this reference all arguments made and authorities cited in his initial brief.

**CONCLUSION**

In light of the above, Mr. Mariano's conviction and sentence should be vacated. If the Court only remands for resentencing, it should order that the sentence be reduced to eliminate the ACCA enhancement.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER


 *s/Margaret Y. Foldes*
Margaret Y. Foldes
Florida Bar No. 83674
Assistant Federal Public Defender
One East Broward Boulevard, Suite 1100
Fort Lauderdale, Florida 33301
Telephone No. (954) 356-7436
Margaret_Foldes@fd.org

16

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of FED. R. APP. P. 32(a)(7)(B), because it contains 4088 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Word Perfect in 14 point, Times New Roman.

*s/Margaret Y. Foldes*
Margaret Y. Foldes

17

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 13th day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent seven copies to the Clerk of the Court via third party commercial carrier for delivery.  I also certify that the foregoing document is being served this day via CM/ECF on Joshua Rothstein, Assistant United States Attorney, 99 NE 4th St., Miami, Florida 33132 and mailed via U.S. Mail to Mr. Shane Mariano, Reg. No. 02434-104, USP Coleman, P.O. Box 1033, Coleman, Florida 33521.


*s/Margaret Y. Foldes*
Margaret Y. Foldes

18